**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 10-CV-81415**

**STEVEN CAROLINI**

      **Plaintiff,**

**vs.**

**LAW OFFICES OF JAMES A. WEST, P.C.**

      **Defendant**
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM OF LAW**

    COMES NOW, Defendant, Law Offices of James A. West, P.C., (hereinafter "WEST") by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, files this Motion for Summary Judgment and Memorandum of Law, and states:

**I.  Undisputed Facts**

1.  On November 10, 2010, Plaintiff filed his Complaint seeking unspecified damages stemming from purported debt collection attempts made by WEST.  Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq.* (the "FDCPA") in attempting to collect an unpaid bill.  *See* DE 1.

2.  In his Complaint, Plaintiff alleges that:

    a.  On or about August 7, 2010, Plaintiff started to receive collection calls from Defendant in regards to a debt allegedly owed to Capital One for approximately $8,755.00.  *See* DE 1 & 7.

    b.  At that time, Plaintiff informed the Defendant that he had retained the services of the law firm Persels & Associates, LLC to help aid him in the settlement of his debt and for them to call their firm directly in this matter.  *See* DE 1 & 8.

1

    c.   Defendant's agent stated that he knew that the Plaintiff was with Persels already, but that they refused to work with them.  *See* DE 1 ¶  9.

    d.   Defendant went on to tell Plaintiff that if Persels ever called then they would just hang up on them.  *See* DE 1 ¶  10.

    e.   That on or about the same day, August 7, 2010, Persels sent a "cease and desist" letter to Defendant. *See* DE 1 ¶  11.

    f.   That on August 24, 2010, August 27, 2010 and August 31, 2010, Plaintiff received a telephone call to from Defendant.  *See* DE 1 &  12, 13, and 14.

    g.   That on or about September 1, 2010, Plaintiff's mother-in-law received a call from Defendant.  *See* DE 1 ¶  15.

    h.   That any and all contact with the Plaintiff after knowledge that they were being represented by an attorney constitutes a violation of the Fair Debt Collection Practices Act.  *See* DE 1 ¶  16.

3.  Plaintiff specifically alleges that such actions violates the FDCPA as follows:

    a.   Defendant violated 1692b(6) – Contact of Third Party: After knowing the consumer is represented by an attorney.

    b.   Defendant violated 1692c(a)(2) – After it knows the consumer to be represented by an attorney unless attorney consents or is unresponsive.

    c.   Defendant violated 1692c(c)- After written notification that consumer refuses to pay debt or that the consumer wants collector to cease communication.

    d.   Defendant violated 1692d – Any conduct the natural consequence of which is to harass, oppress or abuse any person.

e.  Defendant violated 1692d(5) – Caused the telephone to ring or engaged any person in telephone conversations repeatedly.

f.  Defendant violated 1692e – Any other false, deceptive or misleading representation or means in connection with debt collection.

g.  Defendant violated 1692f – Any unfair or unconscionable means to collect or attempt to collect the alleged debt.

4.  The account at issue was an unpaid debt owed by Steven Carolini.  *See Declaration of West in Support of its Motion for Summary Judgment.*

5.  On or about July 28, 2010, the debt was referred the account to West for collection.  *Ibid.*

6.  Attached to West's Declaration as Exhibit 1 are copies of the computer-generated account notes related to Steven Carolini's account.  The notes are generated in the regular course of WEST's business and it was the regular course of WEST's business to make such records within a reasonable time of the transaction or occurrence. WEST trains its employees to make records of any action taken by the employee contemporaneously with or shortly after the action is taken.  For example, employees are trained to enter into the computer system the outcome of any attempt to contact a person relative to an account immediately after completion of the attempt.  *Ibid.*

7.  On or around July 29, 2010, WEST began collection attempts on Steven Carolini's account. *Ibid*

8.  Exhibit 1 demonstrates that on July 29, 2010, WEST sent Steven Carolini a Validation Notice Letter.  *Ibid.*

9.  Thereafter, from July 29, 2010 through September 15, 2010, WEST placed approximately 31 telephone calls in order to reach Steven Carolini regarding the alleged

debt.  No more than one telephone call was placed on any given day to any given number that WEST obtained for Plaintiff.  No phone number was ever called more than once per day, and rarely even on consecutive days.  Only on a handful of occasions were two calls, to separate phone numbers WEST had on file for Steven Carolini, made to Steven Carolini.  *Ibid.*

10. From July 29, 2010 through September 15, 2010, not one collection attempt initiated by WEST resulted in any actual conversations with Steven Carolini.  *Ibid.*

11. The only telephone conversation between Steven Carolini and WEST occurred on August 3, 2010, pursuant to a call that initiated to WEST by Steven Carolini.  *Ibid.*

12. In the telephone conversation of August 3, 2010, Mr. Carolini did not inform WEST that he was represented by counsel.  Rather, Plaintiff informed WEST that he was dealing with CareOne relative to his debt. *Ibid.*

13. CareOne is not an attorney or a law firm.  CareOne is a debt relief servicer based in Columbia, Maryland. *Ibid.*

14. WEST never received any letter of representation from Persels & Associates, LLC regarding any representation of Steven Carolini. *Ibid.*

15. WEST's business records are devoid of any entry that depicts the receipt of Plaintiff's correspondence of August 7, 2010. *Ibid.*

16. WEST has policies and procedures in place for handling "cease and desist" requests from debtors or notices of attorney representation with respect to debtors. *Ibid.*

17. Upon receipt of a "cease and desist" requests from debtors or notices of attorney representation with respect to debtors, WEST provides such information to the appropriate employee(s).  Thereafter, a notation is made in the debtor(s) account that

shows receipt of a "cease and desist" request from a debtor(s) or a notice of attorney representation with respect to debtor(s).   Moreover, the debtor(s)' account is designated/coded in such a way as to indicate that the debtor(s) requests no further communication or that the debtor(s) is represented by counsel so as to avoid violations of any consumer collection laws, such as the Fair Debt Collection Practices Act. *Ibid.*

18. WEST's business records, attached to its Declaration as Exhibit 1, are devoid of any notification or coding that indicates receipt of any correspondence from the Plaintiff, namely Plaintiff's August 7, 2010 correspondence.  *Ibid.*

19. WEST had no knowledge that Plaintiff was represented by counsel with respect to the debt that is the subject matter of Plaintiff's Complaint.  *Ibid.*

## II. Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In reaching a summary judgment decision the court must view the facts in the light most favorable to the non-moving party.  *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. Of America*, 894 F.2d 1555, 1558 (11th Cir. 1990). However, in order to avoid entry of summary judgment the non-moving party "may not rest upon the mere allegations or denials" of his pleadings; instead, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Legal Arguments.

1. **<u>Defendant is entitled to summary judgment with regard to Plaintiff's FDCPA Claims under § 1692b(6) and § 1692c(a)(2)</u>**

A plain reading of the FDCPA demonstrates that ***actual*** knowledge of attorney representation is required to invoke the protections of the statute.

The FDCPA at 15 U.S.C. 1692b(6) states, in relevant part, that "any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall after the debt collector ***knows*** the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector".

The FDCPA at 15 U.S.C. 1692c(a)(2) states, in relevant part, that without the prior consent of the debtor, debt collector may not "communicate with a consumer…if the debt collector ***knows*** the consumer is represented by an attorney with respect to such debt."

"In construing a statute the court must begin, and often should end as well, with the language of the statute itself." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S. Ct. 2151, 2157, 124 L. Ed. 2d 368 (1993); *see also, Bailey v. United States*, 116 S. Ct. 501, 506, 133 L. Ed. 2d 472 (1995). As the Supreme Court has admonished, "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992); *see also, e.g., United States v. LaBonte*, 117 S. Ct. 1673, 1677, 137 L. Ed. 2d 1001 (1997) ("We do not start from the premise that this language is imprecise.

Instead, we assume that in drafting this legislation, Congress said what it meant."). "When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank*, 503 U.S. at 254, 112 S. Ct. at 1149 (internal quotation marks omitted).

There is nothing in the plain wording of the FDCPA that supports Plaintiff's assertion that constructive or imputed knowledge is sufficient to satisfy the requirements of either statute. Federal courts considering the specific legal issue in this case have nearly uniformly required "actual" knowledge by the debt collector to satisfy the requirements of 1692c(a)(2).[1] The United States District Court in and for the Middle District of Florida has decided a similar case in a manner that supports Defendant's position in this case. *See, Cavanaugh v. HSBC Card Services, Inc.*, Case No. 3:10-cv-356 (Order granting defendant Rubin & Debski, P.A., summary judgment, dated September 22, 2010)[2]; *see also Bacelli v MFP, Inc.*, 2010 WL 2985699 (M.D. Fla. July 28, 2010)(both FDCPA and FCCPA require "actual knowledge" of attorney representation as opposed to imputed knowledge from creditor).

The *Cavanaugh* and *Bacelli* decisions follow the nearly unanimous holdings of other federal courts that have considered the same issue.  For example, in *Randolph v. IMBS Inc.,* 368 F. 3d 726 (7th Cir. 2004), plaintiff claimed that a debt collector violated the FDCPA by sending her a letter attempting to collect a debt despite the fact that she had notified the creditor she was represented. The district court ruled this fact irrelevant and found in favor of the plaintiff. However, the Seventh Circuit Court of Appeals overturned the district court's decision and held that "Courts do not impute to debt collectors other information that may be in creditors file."  *Id*. at 729; *see also, Schmitt v. FMA Alliance,* 398 F.3d 995, 997 (8th Cir. 2005)(affirming dismissal

---

[1] Defendant has located only two cases in which a district court specifically held that "actual knowledge" was not

[2] *See,* Exhibit 2.

of complaint based upon collector's argument that "FDCPA requires a plaintiff to plead that the debt collector had actual knowledge of the plaintiff's representation."); *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991); *Offril v. J.C. Penny Company, Inc.*, 2009 WL 69344, 3 (N.D.Cal. 2009)(complaint dismissed where Plaintiff failed to prove that either creditor or plaintiff notified collector that plaintiff was represented by counsel with respect to plaintiff's debt."); *Bianchi v. Bureaus, Inc.*, 2008 U.S. Dist. LEXIS 15976 (N.D. Ill. Feb. 27, 2008)("liability under §1692c turns on the debt collector's actual knowledge."); *Keisler v. Encore Receivable Mgmt.*, 2008 U.S. Dist. LEXIS 31987 (S.D. Ind. Apr. 17, 2008)("knowledge in the hands of [the creditor] is not knowledge in the hands of [the collector]."); *Jones v Weiss*, 95 F.Supp.2d 105 (N.D. N.Y. 2000); *Hubbard v. National Bond & Collection Assoc., Inc.*, 126 B.R. 422 (D. Del. 1991); *Raimondi v. McAllister & Assocs.*, 50 F. Supp. 2d 825, 827 (N.D. Ill. 1999); *Buffington v. Schuman & Schuman*, 2001 U.S. Dist. LEXIS 2267 (N.D.N.Y Feb. 21, 2001); *Countryman v Solomon and Solomon,* 2000 WL 156837 (N.D. N.Y. Feb. 8, 2000); *Filsinger v. Upton, Cohen & Slamowitz*, 2000 WL 198223 (N.D. N.Y. Feb. 18, 2000); *Goodman v. Southern Credit Recovery,* Inc. 1999 WL 14004, 5 (E.D.La.1999).

In the instant case, Plaintiff alleges 1) that on August 7, 2010 he informed WEST that he had retained the services of Persels & Associate, LLC to aid him in the settlement of his debt and 2) that he caused to be sent to WEST a letter dated August 7, 2010 from Persels & Associates which informed WEST that Plaintiff was represented by counsel. Additionally, Plaintiff asserts that WEST "knew" that Plaintiff was represented by counsel with regard to the debt at issue.

However, WEST had no communication with Plaintiff on August 7, 2010. Furthermore, in the only conversation with Plaintiff on August 3, 2010, Plaintiff did not inform WEST that he

was represented by counsel.  Rather, he informed WEST that he was dealing with CareOne relative to the settlement of his debt.  *See* Declaration of WEST in Support of Defendant's MSJ.

Also, the simple fact is that WEST never received any correspondence from Plaintiff and/or Persels & Associates, namely the August 7, 2010 correspondence.  WEST's business records indicate that such correspondence was not received.  Pursuant to WEST's policies and procedures, upon receipt of a "cease and desist" requests from debtors or notices of attorney representation with respect to debtors, WEST provides such information to the appropriate employee(s).  Thereafter, a notation is made in the debtor(s) account that shows receipt of a "cease and desist" request from a debtor(s) or a notice of attorney representation with respect to debtor(s).  Moreover, the debtor(s)' account is designated/coded in such a way as to indicate that the debtor(s) requests no further communication or that the debtor(s) is represented by counsel so as to avoid violations of any consumer collection laws, such as the Fair Debt Collection Practices Act.  WEST's business records, attached to its Declaration as Exhibit 1, are devoid of any notification or coding that indicates receipt of any correspondence from the Plaintiff, namely Plaintiff's August 7, 2010 correspondence.  WEST had no knowledge that Plaintiff was represented by counsel with respect to the debt that is the subject matter of Plaintiff's Complaint *See* Exhibit 1 to Declaration in Support of Defendant's MSJ.

Also, Plaintiff argues that WEST should have known that the Plaintiff was represented by counsel.  The "knew or should have known" standard Plaintiff seeks to impose on WEST is not contained in the FDCPA.

As such, as Defendant did not have **actual knowledge** of attorney representation, Defendant is entitled to summary disposition.

## 2. **Defendant is entitled to summary judgment with regard to Plaintiff's FDCPA Claims under §1692c(c)**

Section 1692c(c) of the FDCPA states as follows:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except –
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, ***notification shall be complete upon receipt***. (emphasis added).

Title 15 U.S.C. 1692c provides that notice by mail is complete upon receipt. See Mammen v. Bronson & Migliaccio, LLP, 715 F. Supp. 2d 1210, 1217 (M.D. Fla. 2009)

In his complaint, Plaintiff avers that on or about August 7, 2010, Persels & Associates sent a "cease and desist" letter to the Defendant requesting that WEST cease all further direct contact with Plaintiff.  Plaintiff has and cannot offer any evidence that WEST actually received such correspondence.  The only evidence in this case is that WEST did not receive Plaintiff's "cease and desist" correspondence.  *See* Declaration of WEST.  WEST's Declaration provides the following evidence:

1. WEST's business records are devoid of any entry that depicts the receipt of Plaintiff correspondence of August 7, 2010.

2. WEST has policies and procedures in place for handling "cease and desist" requests from debtors or notices of attorney representation with respect to debtors.

10

3. Upon receipt of a "cease and desist" requests from debtors or notices of attorney representation with respect to debtors, WEST provides such information to the appropriate employee(s).  Thereafter, a notation is made in the debtor(s) account that shows receipt of a "cease and desist" request from a debtor(s) or a notice of attorney representation with respect to debtor(s).  Moreover, the debtor(s)' account is designated/coded in such a way as to indicate that the debtor(s) requests no further communication or that the debtor(s) is represented by counsel so as to avoid violations of any consumer collection laws, such as the Fair Debt Collection Practices Act.

4. WEST's business records, attached hereto as exhibit 1, are devoid of any notification or coding that indicates receipt of any correspondence from the Plaintiff, namely Plaintiff's August 7, 2010 correspondence.

*See* Declaration of WEST in support of Defendant's MSJ.

As the only evidence in this case is that WEST did not receive Plaintiff's "cease and desist" correspondence of August 7, 2010, WEST is entitled to summary judgment on Plaintiff's §1692c(c) claim.

### 3.   Defendant is entitled to summary judgment with regard to Plaintiff's FDCPA Claims under § 1692d and § 1692d(5).

The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d. Section 1692d includes a non-exhaustive list of conduct that constitutes harassment, oppression or abuse, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or

11

harass any person at the called number." 15 U.S.C. § 1692d(5). Plaintiff contends that WEST violated § 1692d and § 1692d(5).

In order to establish his case, Plaintiff must prove that WEST caused his telephone to ring "repeatedly or continuously." Moreover, the statute also requires Plaintiff to prove that it was WEST's "***intent*** to annoy, abuse, or harass" him. The number of attempts made by WEST to contact Plaintiff does not evidence a pattern of repeated or continuous behavior or an "intent to annoy, abuse or harass" the Plaintiff.

In determining liability under § 1692d(5), "[c]ourts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.' " *Brandt v. I.C. Sys., Inc.,* No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D.Fla. Feb.19, 2010) (*quoting Akalwadi v. Risk Mgmt. Alternatives, Inc.,* 336 F.Supp.2d 492, 505 (D.Md.2004); *Joseph v. J.J. Mac Intyre Cos., LLC.,* 238 F.Supp.2d 1158, 1168 (N.D.Cal.2002)). Under this section, "[a]ctionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages." *Majeski v. I.C. Sys., Inc.,* No. 08 C 5583, 2010 WL 145861, at *3 (N.D.Ill. Jan. 8, 2010). *See Waite v. Fin. Recovery Services, Inc.,* 8:09-CV-02336, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010).

Moreover, in addition to the number of calls, some courts have looked to the percentage of calls which resulted in actual communication with the debtor. For example, in *Saltzman v. I.C. System, Inc.,* 2009 WL 3190359 (E.D.Mich.2009), the court found no § 1692d violation after a large percentage of the calls made were unsuccessful in reaching the debtor. *Id.* at *7. The court reasoned this low ratio of successful calls to unsuccessful calls suggested "a difficulty of reaching Plaintiff, rather than an intent to harass." *Id.* (citing *Millsap v. CCB Credit Services, Inc.,* 2008 WL 8511691, at *17 (E.D.Mich.2008)). *See Fry v. Berks Credit & Collections, Inc.,*

3:11 CV 281, 2011 WL 6057781 (N.D. Ohio Nov. 17, 2011) report and recommendation adopted, 3:11 CV 281, 2011 WL 6057695 (N.D. Ohio Dec. 6, 2011).

From July 29, 2010 through September 15, 2010, WEST placed approximately **31 telephone calls** in order to reach Steven Carolini regarding the alleged debt.  No more than one telephone call was placed on any given day to any given number that WEST obtained for Plaintiff.  No phone number was ever called more than once per day, and rarely even on consecutive days.  Only on a handful of occasions were two calls, to separate phone numbers WEST had on file for Steven Carolini, made to Steven Carolini.  From July 29, 2010 through September 15, 2010**, not one collection attempt initiated by WEST** resulted in any actual conversations with Steven Carolini.  The only telephone conversation between Steven Carolini and WEST occurred on August 3, 2010, pursuant to a call that initiated to WEST by Steven Carolini.  In the telephone conversation of August 3, 2010, Mr. Carolini did not inform WEST that he was represented by counsel.  Rather, Plaintiff informed WEST that he was dealing with CareOne. *See Declaration of WEST filed in Support of its Motion for Summary Judgment.*

In *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1226 (D. Kan. 2011), the defendant was sued for alleged violations of § 1692d(5) whereby it allegedly repeatedly made calls to a consumer with the intent to annoy, abuse, or harass the consumer.  The evidence showed that CBE attempted to collect that debt by sending plaintiff an initial letter, containing the § 1692g(a) required notices, that CBE attempted to contact plaintiff at her home and work telephone numbers between August 31 and October 24, 2009, and that CBE called plaintiff's home number 0–4 times a day and called her work number 0–3 times a day, for a total of **149 calls to plaintiff during a two month period**. *See Carman v. CBE Group, Inc.,* 782 F. Supp. 2d

1223, 1227 (D. Kan. 2011) (emphasis added).  In granting summary judgment to the Defendant on Plaintiff's harassment claim, the Court held as follows:

> the Court finds there is no evidence of an unacceptable pattern of calls. The record is lacking of any indicia of the type of egregious conduct raising issues of triable fact when coupled with a high call volume. Although the number of calls in September and October appears somewhat high, they are unaccompanied by any other egregious conduct to evince an intent to annoy, abuse or harass.  It is uncontroverted that CBE spoke to plaintiff only once, that she asked to call back at a later time, that plaintiff did not discuss her debt with CBE during that one phone call, and that CBE was unable to reach plaintiff at any other time. Plaintiff testified that she deliberately avoided answering any other calls from CBE. There is no evidence that CBE's call attempts were made at odd or unreasonable hours. Unless a busy signal was received, no phone calls were made on the same day within two hours of each other. There is no evidence that the calls were made after plaintiff had spoken to one of CBE's agents or had deliberately hung up on an agent. CBE did not leave any voice mail messages on plaintiff's recording device and there is no evidence that CBE made deliberate "hang up" calls to plaintiff after she answered the phone. There is no evidence plaintiff ever disputed the debt or requested that the calls to her cease. Although plaintiff testified as to her distress and annoyance as a result of CBE's calls, her opinion regarding whether the calls were harassing is not evidence of CBE's intent. Instead, the evidence suggests an intent by CBE to establish contact with plaintiff, rather than an intent to harass

*Id.* 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011).

In *Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301 (M.D. Fla. 2010), the defendant debt collector was sued by the debtor's father for harassment under § 1692d.  The evidence showed that the defendant placed "fifty-seven calls to the relevant number but did not make more than seven calls on any given day [and] left six identical voice messages."  *Id.*, 710 F.Supp.2d at 1303.  In granting defendant summary judgment on plaintiff's § 1692d(5) claim, the court stated:

> Plaintiff has not demonstrated that CBE engaged in oppressive conduct such as repeatedly making calls after it was asked to cease. Notably, Defendant never even spoke to Plaintiff; Defendant was not notified that it could not reach Stacey Tucker at

the relevant telephone number and Plaintiff did not request that CBE cease calling.

        While the number of calls made during the relevant time period does seem somewhat high, Defendant only left a total of six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message. The evidence demonstrates that CBE placed each of its telephone calls with an intent to reach Stacey Tucker rather than an intent to harass Plaintiff.   Thus, the circumstances here do not constitute a violation of Section 1692d(5) as a matter of law.

*Id.*, 710 F. Supp. 2d at 1305.

In *Waite v. Financial Recovery Services, Inc.*, Case No. 8:09–cv–2336–T–33AEP, the Court decided the issue of whether **132 collection calls** made to the plaintiff debtor **over a nine-month period** constituted harassment under 15 U.S.C. § 1692d.  *See Waite*, 2010 WL 5209350 (M.D.Fla. Dec.16, 2010).  In granting summary judgment in favor of the debt collector, the court recognized that while it is generally the rule that whether conduct harasses or abuses will be a question for the jury, courts may resolve the question as a matter of law in appropriate cases. *Id.* at *3 (citing *Jeter*, 760 F.2d at 1179).   And, while recognizing that the number of calls to plaintiff in the initial months especially was high (twenty-nine in February and twenty-seven in March), the court noted that "courts have found that even 'daily' calls, unaccompanied by other egregious conduct, ..., is insufficient to raise a triable issue of fact for the jury." *Id.*  Finding that the calls to plaintiff were unaccompanied by any other egregious conduct evincing an intent to harass, annoy, or abuse, the court concluded "that this is not the type of abusive conduct that the FDCPA was designed to remedy."  *See Druschel v. CCB Credit Services, Inc.*, 8:10-CV-838-T-33TBM, 2011 WL 2681637 (M.D. Fla. June 14, 2011) report and recommendation adopted, 8:10-CV-838-T-33TBM, 2011 WL 2681953 (M.D. Fla. July 11, 2011)

Also adding guidance to this matter is the FTC commentary for 15 U.S.C. § 1692d(5), which instructs that "'Continuously' means making a series of telephone calls, one right after the other." *See* FTC Staff Commentary on the Fair Debt Collection Practices Act located at http://www.ftc.gov/os/statutes/fdcpa/commentary.htm#806. In the case at hand, it is clear that WEST did not contact Plaintiff "continuously" as that term is intended to be construed under the statute.

As stated above, From July 29, 2010 through September 15, 2010, WEST placed approximately **31 telephone calls** in order to reach Steven Carolini regarding the alleged debt. No more than one telephone call was placed on any given day to any given number that WEST obtained for Plaintiff.  No phone number was ever called more than once per day, and rarely even on consecutive days.  Only on a handful of occasions were two calls, to separate phone numbers WEST had on file for Steven Carolini, made to Steven Carolini.  From July 29, 2010 through September 15, 2010**, not one collection attempt initiated by WEST** resulted in any actual conversations with Steven Carolini.  The only telephone conversation between Steven Carolini and WEST occurred on August 3, 2010, pursuant to a call that initiated to WEST by Steven Carolini.  In the telephone conversation of August 3, 2010, Mr. Carolini did not inform WEST that he was represented by counsel.  Rather, Plaintiff informed WEST that he was dealing with CareOne. *See Declaration of WEST filed in Support of its Motion for Summary Judgment.*

As such, the evidence demonstrates WEST did not violate § 1692d and § 1692d(5). *See Carmen v. CBE Group Inc.,* 782 F. Supp. 2d 1223, 1226 (D. Kan. 2011)( Debt collector's repeated calls to consumer were not done with intent to annoy, abuse, or harass consumer, in violation of Fair Debt Collection Practices Act (FDCPA), even though debt collector placed 149 calls to consumer's home and work telephone numbers over course of two month period, since

debt collector's intent was to establish contact with consumer, rather than harass her; debt collector spoke to consumer only once); *See Druschel v. CCB Credit Services, Inc.*, 8:10-CV-838-T-33TBM, 2011 WL 2681637 (M.D. Fla. June 14, 2011) report and recommendation adopted, 8:10-CV-838-T-33TBM, 2011 WL 2681953 (M.D. Fla. July 11, 2011); *See, Tucker*, 710 F. Supp. 2d at 1305; s*ee also, Arteaga v. Asset Acceptance, LLC,* 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010)("Ms. Arteaga presents no evidence that Asset called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested Asset to cease calling. Indeed, Ms. Arteaga does not claim that she requested Asset to cease calling her."); *Waite v. Fin. Recovery Services, Inc.*, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010)(defendant granted summary judgment on harassment claims under FDCPA where evidence showed defendant placed 132 collection calls to plaintiff, including four (4) attempts on certain days, between February 6, 2009 and November 19, 2009))

As the evidence does not support Plaintiff's claims under § 1692d and § 1692d(5), Defendant is entitled to summary judgment.

**4.  Defendant is entitled to summary judgment with regard to Plaintiff's FDCPA Claims under § 1692e and 1692f.**

In his complaint, Plaintiff alleges that WEST violated § 1692e by using false, deceptive or misleading representations in connection with debt collection and § 1692f by using unfair or unconscionable means to collect or attempt to collect the alleged debt.  Plaintiff allegations are founded upon the idea that WEST received plaintiff's correspondence of August 7, 2010, which allegedly informed WEST that Plaintiff was represented by counsel and requested WEST to cease communications with Plaintiff, but nevertheless WEST continued to contact Plaintiff.

However, such reasoning is flawed as WEST never received Plaintiff's August 7, 2010 correspondence and never had actual knowledge of attorney representation.

Section 1692e of the FDCPA states as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692e of the FDCPA states as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

The heart of Plaintiff's allegations that would presumably give rise to a potential violation of Section 1692e and/or 1692f of the FDCPA is the alleged violations of 1692b(6), 1692c(a)(2), 1692c(c), 1692d, and 1692d(5), namely that "any and all contact with Plaintiff after knowledge that [he] was represented by an attorney constitutes a violation of the Fair Debt Collection Practices Act", that Defendant caused Plaintiff's "phone to ring or engaged any person in telephone conversation repeatedly", and/or that Defendant continued to contact Plaintiff after receiving Plaintiff's "cease and desist" correspondence. *See* DE 1.

However, as more fully described and argued above, on or around July 29, 2010, WEST began collection attempts on Steven Carolini's account. Thereafter, from July 29, 2010 through September 15, 2010, WEST placed approximately 31 telephone calls in order to reach Steven Carolini regarding the alleged debt. No more than one telephone call was placed on any given day to any given number that WEST obtained for Plaintiff. No phone number was ever called more than once per day, and rarely even on consecutive days. Only on a handful of occasions were two calls, to separate phone numbers WEST had on file for Steven Carolini, made to

18

Steven Carolini.  From July 29, 2010 through September 15, 2010, not one collection attempt initiated by WEST resulted in any actual conversations with Steven Carolini.  The only telephone conversation between Steven Carolini and WEST occurred on August 3, 2010, pursuant to a call that initiated to WEST by Steven Carolini.  In the telephone conversation of August 3, 2010, Mr. Carolini did not inform WEST that he was represented by counsel.  Rather, Plaintiff informed WEST that he was dealing with CareOne.  CareOne is not an attorney or a law firm.  CareOne is a debt relief servicer based in Columbia, Maryland. *See* Declaration of WEST.

Moreover, WEST never received any letter of representation from Persels & Associates, LLC regarding any representation of Steven Carolini.  WEST's business records are devoid of any entry that depicts the receipt of Plaintiff correspondence of August 7, 2010.  WEST has policies and procedures in place for handling "cease and desist" requests from debtors or notices of attorney representation with respect to debtors.  Upon receipt of a "cease and desist" requests from debtors or notices of attorney representation with respect to debtors, WEST provides such information to the appropriate employee(s).  Thereafter, a notation is made in the debtor(s) account that shows receipt of a "cease and desist" request from a debtor(s) or a notice of attorney representation with respect to debtor(s).  Moreover, the debtor(s)' account is designated/coded in such a way as to indicate that the debtor(s) requests no further communication or that the debtor(s) is represented by counsel so as to avoid violations of any consumer collection laws, such as the Fair Debt Collection Practices Act. WEST's business records, attached to its Declaration as exhibit 1, are devoid of any notification or coding that indicates receipt of any correspondence from the Plaintiff, namely Plaintiff's August 7, 2010 correspondence. *See* Declaration of WEST.

As such, Defendant's alleged conduct would not give rise to a potential violation of 1692b(6), 1692c(a)(2), 1692c(c), 1692d, and/or 1692d(5), much less a violation of 1692e or 1692f.  Therefore, Defendant is entitled to summary judgment on Plaintiff's 1692e and 1692f claims.

## IV. Conclusion

WHEREFORE, Based upon the foregoing, Defendant respectfully requests an Order from this Court granting it summary judgment as a matter of law on Plaintiffs' claims as discussed above.

Respectfully submitted by:

/s/ Dale T. Golden
**GOLDEN & SCAZ, PLLC**
Dale T. Golden, Esquire
FBN:  0094080

 /s/ Charles J. McHale
Charles J. McHale, Esquire
Florida Bar No. 0026555

201 North Armenia Avenue
Tampa, FL  33609
Phone:  813-251-5500
Fax:  813-251-3675
Email:  dale.golden@goldenscaz.com
Email:  cmchale@goldenscaz.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Dale T. Golden
DALE T. GOLDEN, ESQUIRE
Florida Bar No. 0094080

 /s/ Charles J. McHale
Charles J. McHale, Esquire
Florida Bar No. 0026555